UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VONDA NOEL, On behalf of HERSELF and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:11-cv-519 |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE, | ) ) ) ) ) | Judge Sharp |
| Defendant. | ) | |

# MEMORANDUM

On January 28, 2014, the Court ruled on the parties' summary-judgment motions. The Court's order denied Plaintiff Vonda Noel's motion on the her breach-of-contract claim, granted Defendant Metro's motion on the same claim, and denied Metro's motion as to Noel's unjust-enrichment claim. Pending before the Court are the parties' separate motions to reconsider or amend the summary-judgment order. (Docket Nos. 260 & 267). For the reasons that follow, the Court will DENY both motions.

# ANALYSIS

*Plaintiff's motion to alter or amend (Docket No. 267)*

The Court first addresses Noel's motion, brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend the Court's decision to grant summary judgment to Metro on Noel's breach-of-contract claim. "The purpose of Rule 59(e) is 'to allow the district court to correct its own errors, sparing the parties and appellate courts the burden of unnecessary

1

appellate proceedings.'" *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1998)). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citation omitted). Notably, "[a] motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). The decision to grant relief under Rule 59(e) is left to the Court's sound discretion. *In re Ford Motor Co. Sec. Litig., Class Action*, 381 F.3d 563, 573 (6th Cir. 2004).

The Court's analysis of Noel's breach-of-contract claim turned on the fact that Noel failed to show that the "Pay Plan . . . creates a contractually binding obligation on Metro to pay [Metro's Correctional Officers (COs)] the Pay Plan's hourly rate." (Docket No. 245 at 6). Noel had to do so by virtue of "the 'general rule' that, 'absent some clear indication by a legislative body that it intends to bind itself contractually, there is a presumption [that] a law is not intended to create private contractual or vested property rights, but rather the law merely declares a policy to be pursued until a legislative body ordains otherwise.'" (*Id*. at 4–5 (citing *Stohler v. Menke*, 998 F. Supp. 836, 839 (E.D. Tenn. 1997); *Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465–66 (1985); *Dodge v. Bd. of Educ. of City of Chi.*, 302 U.S. 74, 79 (1937))). Noel's failure to point to language or circumstances in the enactment of the Pay Plan demonstrating a legislative intent to create contractual rights in her favor meant that she could not overcome the presumption. Given that the Pay Plan was "'an act merely fixing salaries of officers'" that "'may be altered at the will of the Legislature,'" the Court concluded that it "'create[d] no contract in [the COs'] favor.'" (*Id.* (quoting *Dodge*, 302 U.S. at 78–79)).

2

Noel now faults the Court for construing her claim as seeking to enforce only the Metro Pay Plan, while ignoring the role of the Metro's Charter and Civil Service Rules in obligating Metro to pay COs the Pay Plan's hourly rate. Noel contends that the Court's cramped view of the legislative enactments on which she asserted COs' contractual right led to the flawed conclusion that Noel failed to overcome the presumption. Noel's Rule 59(e) motion does not take issue with the Court's reliance on this time-worn presumption, urging only that the Court failed to consider the full array of legislative enactments that allegedly enable Noel to overcome it.

As an initial matter, the Court questions whether it should even consider Noel's motion, since she presented *no* arguments in her summary-judgment briefing relating to the presumption that legislative enactments do not create contractual rights. Instead, Noel took it as a given that the legislative enactments at issue conferred a contractual right on COs to be paid the hourly rate specified in the Pay Plan. (*See, e.g.*, Docket No. 203 at 24–26). A Rule 59(e) motion is "aimed at *re*consideration, not initial consideration," so a party "should not use [it] to raise arguments which could, and should, have been made before judgment issued." *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) (internal quotation marks omitted). Yet that is precisely what Noel does now.

For the sake of argument, however, the Court will address Noel's claim on the merits. Noel urges that the Charter and the Civil Service Rules demonstrate Metro's "clear intent" to bind itself to paying COs at the pay rates set forth in the Pay Plan. As relevant here, the Charter requires the adoption of a Pay Plan which, "[u]pon approval . . . by the mayor and council, . . . shall be the pay plan under which all covered employees must be paid." (Docket No. 203-1). And the Civil Service Rules, in turn, provides that "[n]o employee shall be paid at a rate less than

the base rate nor more than the maximum for a classification as provided for in the pay plan[.]" (Docket No. 203-7). Noel makes two related points about these documents. (Docket No. 268 at 7). The first is that the Charter commands that an approved Pay Plan "shall" be the one under which COs "must be paid." The second is that the use of the similarly mandatory "shall" in the Civil Service Rules prohibits COs from earning less than the applicable base rate in the Pay Plan.

Noel's arguments are unconvincing. The use of a mandatory term in a statute does not, without more, transform a legislative enactment into a contractual right. That Metro "shall" pay COs in accord with Pay Plan declares a policy that subsequent legislation may revise. The word "shall" does not bar Metro from altering the Pay Plan, rescinding it altogether, or fashioning an entirely new method to pay its employees. And Metro can change or do away with the Pay Plan with no consultation with COs. Plaintiffs do not contend otherwise.

At bottom, while "it is easy enough for a statute explicitly to authorize a contract or to say explicitly that the benefits are contractual promises, or that any changes will not apply to a specific class of beneficiaries," the legislative enactments here do not do so. *Nat'l Educ. Assoc.- R.I. ex rel. Scigulinsky v. Ret. Bd. of R.I. Emps.' Ret. Sys.*, 172 F.3d 22, 27–28 (1st Cir. 1999) (footnote omitted) (citing cases). Absent both "language and circumstances [that] evince a legislative intent to create private rights of a contractual nature enforceable against [Metro]," the Court declines to treat the Pay Plan—standing alone or alongside the Metro's Charter and Civil Service Rules—as a contract. *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 18 n.14 (1977). As a result, the Court will deny Noel's motion.

*Defendant's motion for reconsideration (Docket No. 260)*

Defendant Metro moves the Court to reconsider its order denying summary judgment to Metro on Noel's unjust-enrichment claim or, in the alternative, to certify several questions to the Tennessee Supreme Court. (Docket No. 260). The same standard applies to Metro's reconsideration motion as to Noel's motion to alter or amend pursuant to Rule 59(e). *See Al-Sadoon v. FISI*Madison Fin. Corp.*, 188 F. Supp. 2d 899, 901–02 (M.D. Tenn. 2002).

Metro's key contention is that the Court erred in permitting Noel's unjust-enrichment claim to proceed because the existence of governing legislation that "dictates" the result Noel seeks—here, the Pay Plan—"automatically foreclose[s]" her claim for unjust enrichment. (Docket No. 273 at 8). In other words, according to Metro, Tennessee law does not support the creation of an implied-in-law contract in the presence of a controlling ordinance.

Metro concedes that "there are no cases directly on point that explicitly recognize" its position. (Docket No. 273 at 8). Metro's problem, though, is graver than a lack of authority supporting its position, since the Tennessee Court of Appeals has analyzed a highly analogous case in precisely the manner that Metro insists is foreclosed. In *Ussery v. City of Columbia*, 316 S.W.3d 570 (Tenn. Ct. App. 2009), a class of police officers claimed their municipal employer breached express and implied contracts with them when it failed to provide merit-pay raises to which they were entitled under various employee handbooks and city ordinances. The case was tried to the bench. *Id*. at 576. While "[t]he trial court stopped short of holding that the ordinances constitute an express contract between the Class and the City," it concluded that "the ordinances give rise to an implied contract in law." *Id*. at 582. The City appealed.

The appellate court reviewed the lower court's analysis of the officers' contract-implied-in-law claim, the elements of which are the same as Noel's unjust-enrichment claim. *Compare*

*id*. *with Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). The trial court had found that the city "used the pay ordinances to control its work force's work performance and behavior" and "took advantage" of the fact that its employees performed well "based on the belief that they would receive a merit pay increase" that the ordinances promised. *Ussery*, 316 S.W.3d at 583 (internal quotation marks and brackets omitted). The *Ussery* court "reviewed the appellate record" and concluded that "this finding is not supported by a preponderance of the evidence." *Id*. As a result, it reversed the trial court and held that "the ordinances do not reach the level of a contract implied in law." *Id*.

That conclusion, however, did not "lead [the reviewing court] to conclude that the [officers] had no remedy under the ordinances." *Id*. Instead, the court asked "whether the City violated its ordinances on their face." *Id*. at 584. Applying the rules of statutory construction to determine their meaning and intent, *Ussery* concluded that the city's failure to give merit-pay increases to the officers under the circumstances "violated the ordinances." *Id*. at 586.

*Ussery* subverts Metro's claim that "permitting an unjust enrichment claim to proceed where binding municipal legislation dictates the result that is sought to be enforced through the unjust enrichment claim." (Docket No. 273 at 8–9). *Ussery* did not fault the trial court for considering the implied-contract claim in the face of controlling ordinances (which the ones in *Ussery* clearly are). Instead, *Ussery* reversed the trial court's conclusion that the officers made out the elements of that claim because the evidence was insufficient to sustain that determination. If the existence of controlling ordinances "automatically foreclose[s]" an implied-contract claim, then the *Ussery* court would have no reason to weigh whether the evidence preponderated to support the trial court's factual finding. In short, *Ussery* gives no

indication that Noel's unjust-enrichment claim cannot stand if Noel could instead have brought a different claim alleging that Metro violated its ordinances. In fact, it suggests just the opposite.

*Ussery* undermines Metro's motion for another reason. Metro maintains that the Court erred in allowing Noel's unjust-enrichment claim to proceed because doing so requires sending to the jury the issue of the legislative intent of the Pay Plan. (*See* Docket No. 261 at 9–11). Metro is mistaken, however, because Noel's choice to advance an unjust-enrichment claim, rather than to proceed under an ordinance-violation theory, will not require a jury to engage in a statutory-interpretation exercise. Instead, Noel will put to the jury a straightforward factual question as she seeks to prove what the officers in *Ussery* could not; namely, that the facts and circumstances support the conclusion that the Pay Plan "reach[es] the level of a contract implied in law." *Id*. at 583. If the jury finds that COs conferred a benefit on Metro for which Metro did not appropriately compensate them, and that, in the interests of justice, COs can recover the value of that benefit, Noel will succeed. And if, as in *Ussery*, a preponderance of the evidence does not support such a finding, she will fail. The bottom line is that Tennessee law supports the conclusion that the claim Noel pleads requires the jury to engage in routine fact finding, not statutory interpretation. Because Metro's argument lacks persuasive force, the Court will deny its reconsideration motion.

Metro alternatively requests that the Court certify to the Tennessee Supreme Court several issues related to Metro's view of the interaction between the Pay Plan and Noel's unjust-enrichment claim. The decision of whether to certify a question to a state supreme court "rests in the sound discretion of the federal court." *Lehman Bros. v. Shein*, 416 U.S. 386, 391 (1974). "While a matter of discretion, it is not a decision undertaken lightly by this Court." *Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cnty.*, 2011 WL 4048523, at *12 (M.D. Tenn.

Sept. 12, 2011). "[F]ederal courts often answer state law questions, just as state courts answer federal questions," and "the practice of certifying questions can be overused and add unnecessary burden on the answering court[.]" *Id.*

> Under Tennessee law,
>
> [t]he Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a District Court of the United States in Tennessee, or a United States Bankruptcy Court in Tennessee. This rule may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of this state which will be determinative of the cause and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee.

Tenn. Sup. Ct. R. 23 § 1. "Rule 23 permits consideration of questions of law only, not questions of fact or controversies as a whole." *Seals v. H & F, Inc.*, 301 S.W.3d 237, 241 (Tenn. 2010).

Certification is inappropriate in this case. The Court has rejected Metro's argument that the existence of governing legislation that "dictates" the result an unjust-enrichment claim seeks "automatically foreclose[s]" such a claim. It has done so on the basis of published authority from the Tennessee Court of Appeals. Metro does not point to opposing authority that plausibly conflicts with *Ussery* on this point. And while *Ussery* is obviously not controlling precedent from the state's highest court, the Court will not "trouble [the Tennessee Supreme Court] every time an arguably unsettled question of state law comes across [its] desk[]." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). In this case, the Court "see[s] a reasonably clear and principled course" and thus "seek[s] to follow it." *Id.* (internal quotation marks omitted). Accordingly, the Court will deny Metro's alternative motion.

## **CONCLUSION**

For the reasons stated, the Court will DENY Plaintiff's motion to alter or amend (Docket No. 267) and will DENY Metro's motion for reconsideration (Docket No. 260). This matter will be set for a final pretrial conference and trial. An appropriate order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE